**In the Matter of SOUTHERN BIOTECH, INC., Debtor.**

**Bruce L. LIEBERMAN, Plaintiff,**

v.

**SOUTHERN BIOTECH, INC., Defendant.**

**Bankruptcy No. 82–1078.**
**Adv. No. 82–518.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 31, 1983.

Edward M. Waller, Jr., Tampa, Fla., for plaintiff.

Albert I. Gordon, Tampa, Fla., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 business reorganization case and the immediate matter under

consideration is a determination of ownership of certain cabinets and electrical transformers located on the commercial premises occupied by Southern Biotech, Inc., the Debtor and owned by Bruce L. Lieberman, Armer 510 Co. and Barnard H. Kayden (Lieberman), the Plaintiffs in the above-styled adversary proceeding. The adversary proceeding was commenced upon the filing of a complaint by Lieberman in which he sought to restrain the Debtor, Southern Biotech, Inc. as lessee from removing certain fixtures and chattels from the Plaintiffs' premises. The Court entered an order and prohibited the Debtor from removing the fixtures and chattels. In due course, the Debtor rejected the executory portion of the lease and the Court ordered the Debtor to vacate the premises leaving in place any disputed items until ownership could be determined. Although the Plaintiff initially claimed an ownership interest in several items, only two items remained in dispute at the time of the final evidentiary hearing, i.e. certain cabinets in Suite 321 and electrical transformers.

The Court heard argument of counsel and testimony of witness, received documentary evidence and finds as follows:

On August 8, 1980, Justice Corporation, as agent for the owner, and Key Interferon, a joint venture and predecessor in interest of the Debtor, executed a lease agreement whereby Key Interferon leased Suite 321 located at University Professional Center, 3500 E. Fletcher Avenue, Tampa, Florida from the owner (Pl's Exh. # 3). Schedule C of the lease agreement provided that the Lessor agreed to provide construction improvements at a cost up to, but not exceeding, $90,228. The Lessee agreed to be responsible for any construction costs which exceeded that figure. In addition, Paragraph 3(b) of the lease provides, "all fixtures and equipment of whatsoever nature except fixtures and equipment furnished at Lessor's cost and expense, as shall have been installed in the demised premises by the Lessee, whether permanently affixed thereto or otherwise, shall continue to be the property of the Lessee..."

Shortly after the parties executed the Lease, the lessee arranged for the installation of 150 feet of upper cabinets and 190 feet of lower cabinets, suitable for use in a medical laboratory in addition to shelving and desks. On September 29, 1980, Key Interferon issued a check to Wendall B. Adams Construction Company (Adams), the builder, in the amount of $51,200 for desks, cabinets, and shelves (Df's Exh. # 1). A bill for the cabinet work was later submitted to Lieberman (Pl's Exh. # 5) who, on November 6, 1980, drew a check in favor of Adams in the amount of $25,000. Lieberman subsequently stopped payment on the check on the Debtor's instructions because the work did not meet the Debtor's specifications.

Finally, on November 25, 1980, the Debtor issued a second check to Adams in the amount of $25,000. The invoice which accompanied the second billing listed charges for cabinet work completed in the reception area, fiberblast lab area and break room area (Df's Exh. # 2).

In June 1981, a second lease was negotiated and executed between Lieberman and Southern Medical and Pharmaceutical Corp., also a predecessor of this Debtor (Pl's Exh. # 2). Rider B of the 1981 lease states in pertinent part:

"Lessor recognizes that it is indebted to Lessee for the sum of $25,000 representing advances made by Lessee for remodeling of Suite 321, for Lessee Key Interferon which Lessee convenants is an affiliate of Lessee herein and said $25,000 shall be retained by Lessor and applied against Lessee's portion of the estimated construction costs herein."

It is the contention of the Lessor that the parties contemplated that the cost of the laboratory cabinets in Suite 321 would be borne by the Lessor, that the $25,000 credit reflected in Rider B of the second lease agreement served to reimburse the lessee for the cost of the cabinets and that the credit arrangement between the parties had the same economic effect as if the lessor had made direct payment for the cabinets. Thus, the Lessor claims ownership in accordance with Paragraph 3(b) of the lease.

It is undisputed that the Debtor remitted the total sum of $76,200 (Df's Exhs. # 1 and # 2) to Wendall B. Adams Construction Company for improvements to Suite 321 and that Lieberman did not make any direct payments to the same. It is the Debtor's contention that the total cost of the laboratory cabinets exceeded $25,000 and there was never any agreement that the $25,000 credit, reflected in Rider B, was to serve as reimbursement to the lessee for sums advanced in payment for the cabinets.

Upon consideration of the entire record, the Court is of the opinion that the testimony and documentary evidence presented could reasonably support the contentions of either of the parties. The issue thus becomes one of burden of proof and because Lieberman has failed to show with the requisite degree of proof, that the cabinets are, in fact, property belonging to the lessor, he has failed to carry his burden. Accordingly, the Court must find in favor of the Debtor.

In addition, it is the opinion of this Court in accordance with the evidence adduced at trial, that the large transformer and one of the small transformers belong to the Lessor and that transformer which was installed in October of 1980 for use with the dishwasher was purchased by and remains the property of Southern Biotech.

Inasmuch as the parties have not consented to the entry of a dispositive final judgment by this Court in this proceeding which is "related to" a case filed under Title 11, pursuant to Emergency Local Rule (d)(3) and (e)(2), this Court will transmit these findings of fact, conclusions of law and a proposed final judgment to the District Court for consideration. Such transmission shall not be deemed a final disposition of the controversy until a Final Judgment is signed by a District Judge.

A separate final judgment will be entered in accordance with the foregoing.